STATE ex rel. MOROTZ, Relator, *v.* RICKARDS et
AL., CONSTITUTING THE STATE BOARD OF
EXAMINERS, Respondents.

[Submitted December 9, 1895. Decided January 20, 1896.]

Appropriations—*State auditor—Claims against stock bounty fund—Mandamus to
board of examiners.*—The state board of examiners cannot be compelled by *mandamus*
proceedings commenced in April, 1895, to endorse and transmit to the state auditor
claims audited and allowed by it and which were due the relator under the provisions
of the act of March 8, 1893, appropriating money for the payment of bounties for the
killing of certain stock destroying animals, when it appeared that prior to said act of
March 8, the legislature had appropriated for the fiscal years 1893 and 1894, sums
largely in excess of the revenue for said years; that at the expiration of each of said
years the unused portions of the appropriations for said years had been covered back
into the treasury and consumed by the legislature of 1895 in appropriations for other
purposes, thereby leaving no available fund upon which the board could lawfully di-
rect the auditor to draw his warrant for the amount of relator's claim.

Original proceeding. Application for a writ of *mandamus*
to compel the state board of examiners to endorse and transmit
to the state auditor claims against the bounty fund.

*Cullen & Toole*, for Relator.

*Henri J. Haskell,* Attorney General, for Respondent.

Pemberton, C. J.—This is an application for a writ of
mandamus, instituted in this court. In his application the re-
lator alleges that the claims mentioned therein are due and
owing to him under the provisions of an act of the legislature
entitled "An act appropriating moneys for the payment of
bounties for the killing of certain stock-destroying animals,"
approved March 8, 1893; that he has complied with the pro-
visions of said act; that he duly presented his claims to the
respondents, one on the 1st day of March, 1893, and the other
on the 4th day of March, 1894, that the respondents num-
bered and filed said claims on said days; that said respondents,
as said board of examiners, audited and allowed his claims,
but that, as said board, they refused to indorse their approval
of the same, or to transmit the same to the state auditor, to

enable or authorize the auditor to draw his warrant for the amount of said claims, as it is alleged it was the duty of said board of examiners to do. It is alleged that at all times there was ample funds appropriated and available, and still available, for the payment of such claims.

The issuance of the writ is resisted by the board of examiners on the ground that prior to the passage of the act of March 8, 1893, referred to and relied on in relator's application, the legislative assembly, by several appropriation bills, had appropriated for the fiscal years 1893 and 1894 sums largely in excess of the revenue and the total tax provided by law for said fiscal years.

It is further contended by respondents that, as relator presented his claims to the board on the 1st day of March, 1893, and the 4th day of March, 1894, and did not commence this proceeding until the 9th day of April, 1895, and as, in the meantime, whatever funds that could be held in any event to have been appropriated and available for the payment of relator's claims under the act of March 8, 1893, had, under the law, been covered back into the treasury, and consumed by appropriation bills of the legislative assembly enacted thereafter, leaving no funds in the treasury appropriated or available upon which the board could lawfully direct the auditor to draw his warrant,—under such a condition of affairs, there was no available fund upon which the board could direct the auditor to draw his warrant, and no such fund as the auditor could lawfully draw his warrant upon to pay said claims.

Upon such issues of fact being presented, we appointed Oliver T. Crane, Esq., a member of the bar, referee, to take the testimony, and report the same, together with his findings of fact and conclusions of law, to the court. His findings of fact and conclusions of law are as follows:

Findings of fact: "First. That the moneys appropriated by the third legislative assembly of the state of Montana, by an act entitled 'An act appropriating money for the payment of bounties on certain stock-destroying animals,' approved March 8, 1893, for the fiscal year ending December 1st, A. D.

1893, and the fiscal year ending December 1st, A. D. 1894, respectively, were not available for the payment of bounties, aforesaid, for said years, or either of them. Second. That the said third legislative assembly of the state of Montana, prior to the passing of the act entitled 'An act appropriating money for the payment of bounties on certain stock-destroying animals,' approved March 8, 1893, and during said session, by several appropriation bills appropriated for the fiscal year ending December 1, 1893, not less than the sum of $734,859.08, which said sum was in excess of the revenue collected, and exceeded the total tax then provided for by law, and applicable to such appropriations or expenditures for said fiscal year. Third. That the receipts of the state's revenue from all sources, and from the total tax then provided for by law, and applicable to said appropriation or expenditures last aforesaid, for the fiscal year 1893, did not exceed the sum of $691,264.-53. Fourth. That the said third legislative assembly of the state of Montana, prior to the passing of the act entitled 'An act appropriating money for the payment of bounties on certain stock-destroying animals,' approved March 8, 1893, and during said session, by several appropriation bills appropriated for the fiscal year ending December 1st, 1894, not less than the sum of $471,085.00, which said sum was in excess of the revenue collected, and exceeded the total tax then provided for by law, and applicable to such appropriations or expenditures for said fiscal year. Fifth. That the receipts of the state's revenue from all sources, and from the total tax then provided for by law and applicable to said appropriations or expenditures aforesaid for the fiscal year 1894, did not exceed the sum of $425,153.08. Sixth. That the said act, entitled 'An act appropriating money for the payment of bounties on certain stock-destroying animals,' approved March 8, 1893, which appropriated 'the sum of $20,000 for the fiscal year ending December 1, A. D. 1893, and for the fiscal year ending December 1st, A. D. 1894, respectively,' exceeded the total tax then provided for by law, for each of said fiscal years, and applicable to such appropriations or expenditures; and that the

said legislative assembly, at said session, made no provision for levying a sufficient tax to pay such appropriations or expenditures, within such fiscal years. Seventh. That there was covered back into the treasury of the state, at the end of the fiscal year 1893, the sum of $66,482.50. Eighth. That there was covered back into the treasury of the state, at the end of the fiscal year 1894, the sum of $78,670.67. Ninth. That the said moneys so covered back into the treasury of the state, at the end of the fiscal years 1893 and 1894, respectively, were unused portions of appropriations, resulting from the necessary economical action of the state officers in restricting the expenditures of money by the state under the several appropriation bills passed by the third legislative assembly prior to the passage of the act entitled 'An act appropriating money for the payment of bounties on certain stock-destroying animals,' approved March 8, 1893, to amounts less than the whole amount appropriated by said bills, and to an amount not to exceed the total revenue of the state, then provided for by laws, and applicable to such appropriations or expenditures in each of said fiscal years."

Conclusions of law: "First. That the act entitled 'An act appropriating money for the payment of bounties on certain stock-destroying animals,' approved March 8, 1893, and all thereof, appropriating 'the sum of $20,000 for the fiscal year ending December 1st, A. D. 1893, and for the fiscal year ending December 1st, A. D. 1894, respectively, was, at the time of its passage and approval, within the prohibitory provisions of section 12 article XII of the constitution of the state of Montana, and that such appropriation was absolutely null and void, and has never been in force and effect. Second. That, in the absence of any legal appropriation of moneys to pay bounties on certain stock-destroying animals for the fiscal years ending December 1, 1893, and December 1, 1894, the relator has not now, and never has had, any legally enforceable claim against the state of Montana; and his application for the writ of mandamus should be denied. Third. That the sums of money, or any part thereof, covered back into the treasury of the state

at the end of the fiscal years 1893 and 1894, respectively, were not legally available for the payment of bounties under the act entitled 'An act appropriating money for the payment of bounties on certain stock-destroying animals,' approved March 8, 1893, in said years, or either of them.''

It is not contended that the findings of fact are not sustained by the evidence. The findings are therefore approved and adopted.

It is evident, from the findings, that at the date of the commencement of these proceedings there was no part of the appropriations of funds for the fiscal years 1893 and 1894 remaining unappropriated by the legislative assembly, or available for the payment of relator's claims. Whatever parts of the funds appropriated for those fiscal years which had been covered back into the treasury at the end thereof, because unused, had been absorbed and consumed by the legislative assembly of 1895 in appropriations for other purposes. So that when this case was commenced there was no fund upon which the board could direct the auditor to draw his warrant, or upon which he could lawfully draw his warrant, if so directed. For this reason the writ is dismissed.

*Writ Dismissed.*

DE WITT and HUNT, JJ., concur.